UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAUL B. ROSENTHAL,<br><br>Plaintiff,<br><br>v.<br><br>THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA,<br><br>Defendant. | CIVIL ACTION NO. _____ |

## COMPLAINT

1. Saul B. Rosenthal, an alumnus of, and donor to, the University of Pennsylvania, brings this action for rescission or alternatively breach of two scholarship agreements with the University. Despite promising in the agreements to use Rosenthal's donations for scholarships for Wharton students studying entrepreneurship or finance, the University instead diverted these funds to student athletes in breach of the agreements.

2. Mr. Rosenthal therefore seeks rescission of the scholarship agreements and restitution of the amounts donated under the agreements, or alternatively damages for breach of the agreements. Mr. Rosenthal also seeks to dissociate from the University and prevent it from using his name or associating him in any way with its scholarships.

### PARTIES

3. Plaintiff Saul Rosenthal resides and is domiciled in New York.

4. Defendant Trustees of the University of Pennsylvania are chartered as a corporation pursuant to Pennsylvania law and entrusted with the oversight of the University of Pennsylvania (together with the Trustees, the "University"), an institution of higher learning based in Philadelphia, Pennsylvania.

## JURISDICTION AND VENUE

5. Mr. Rosenthal is domiciled in New York and is therefore a citizen of New York.

6. The University is a corporation established under Pennsylvania law and has its principal place of business in Pennsylvania and is therefore a citizen of Pennsylvania.

7. The amount in controversy in this action exceeds $75,000 because Mr. Rosenthal seeks to recover donations totaling approximately $168,000.

8. This Court therefore has diversity jurisdiction over this action under 28 U.S.C. § 1332.

9. Venue is proper in this District because the University resides in this District and in the Commonwealth of Pennsylvania, and because a substantial part of the acts and omissions giving rise to Mr. Rosenthal's claims occurred in this District.

## FACTUAL BACKGROUND

### I. The Rosenthal Scholarship

10. On or about January 26, 2012, Mr. Rosenthal entered into a written agreement with the University pursuant to which he promised to donate $125,000 in cash or marketable securities to the University over a five-year period (the "First Scholarship Agreement"). In consideration for these donations, the University promised, among other things, to establish a scholarship fund in Mr. Rosenthal's name (the "Scholarship"), which would award scholarships to Wharton students in need of financial assistance, with a first preference for students specializing in Entrepreneurship and Innovation, and a secondary preference for students with a concentration in Finance.

11. On June 30, 2015, Mr. Rosenthal entered into a second agreement in which he promised to donate another $25,000 in cash and marketable securities to the Scholarship fund (the "Second Scholarship Agreement," and together with the First Scholarship Agreement, the "Scholarship Agreements"). In consideration for this donation, the University promised, among

other things, to use the donated funds for the Scholarship as promised in the First Scholarship Agreement.

12. Mr. Rosenthal's donations under the Scholarship Agreements ultimately totaled over $168,000 in cash and marketable securities. As of June 2022, the market value of the Scholarship Fund exceeded $250,000. The University has used a portion of the investment gains realized from the donations, rather than the principal amount, to fund scholarships for students.

13. Mr. Rosenthal and the University expressly entered into the Scholarship Agreements "[i]n order to ensure that donors' gifts are used for the intended purpose."

## II.   The University Breaches the Scholarship Agreements

14. The University breached the Scholarship Agreements by using Mr. Rosenthal's donations to fund scholarships for student athletes rather than for students actually studying Entrepreneurship and Innovation or Finance. Mr. Rosenthal does not object to students athletes receiving University scholarships. But the University should not have funded those scholarships using the donations that Mr. Rosenthal provided for the specific purpose – which the University agreed to honor – of promoting the study of Entrepreneurship and Innovation or Finance.

15. In particular, the University expressly promised Mr. Rosenthal in the Scholarship Agreements that it would award funds from the Scholarship to Wharton students in need of financial aid, with a "preference" for students specializing in Entrepreneurship and Innovation or with a concentration in Finance.

16. Despite these promises, the University awarded Scholarship funds to student athletes that did not meet these criteria. For example, the University awarded Scholarship funds to a track and field athlete who was not specializing in Entrepreneurship or Innovation and had no concentration in Finance.

-3-

17. As another example, the University awarded Scholarship funds to a soccer player who similarly was not specializing in Entrepreneurship or Innovation and had no concentration in Finance. The student candidly admitted that the scholarship she received functioned as a substitute for an athletic scholarship – which, as a member of the Ivy League, the University cannot award – and facilitated her participation on the University's soccer team. More troubling still, the University falsely told Mr. Rosenthal that this student was pursuing a "Minor" in "Entrepreneurship and Innovation." But no such minor is offered by the University, and the student never obtained such a minor.

18. Upon information and belief, there were one or more students attending Wharton with each of the two scholarship recipients described above who, unlike the recipients, were actually pursuing a specialization in Entrepreneurship and Innovation or a concentration in Finance and needed financial aid.

19. The University breached the Scholarship Agreements by selecting students who did not obtain a specialization in Entrepreneurship or Innovation or a concentration in Finance to receive Scholarship funds rather than awarding the funds to other qualifying students who actually were pursuing a specialization in Entrepreneurship or Innovation or a concentration in Finance.

20. Mr. Rosenthal previously complained to the University that it was not using the Scholarship funds for their intended purpose. The University temporarily changed its practices for awarding the Scholarship funds, but then reverted to awarding the funds to student athletes despite the University's prior assurances that it would honor the Scholarship Agreements.

## COUNT I – BREACH OF CONTRACT

21. In 2012 and 2015 Mr. Rosenthal and the University entered into contracts, as reflected in the Scholarship Agreements.

-4-

22. The Scholarship Agreements were executed to ensure that Mr. Rosenthal's donations were used for their "intended purpose." Pursuant to these Agreements, the University was obligated, in awarding Scholarship funds, to prefer aid-eligible students with a specialization in Entrepreneurship and Innovation or a concentration in Finance.

23. Implied in the Scholarship Agreements was a covenant of good faith and fair dealing pursuant to which the University would do nothing to deprive Mr. Rosenthal of the reasonably anticipated benefits of the Agreement. Among other things, Mr. Rosenthal reasonably anticipated that the Scholarship funds would be awarded to students pursuing a specialization in Entrepreneurship and Innovation or a concentration in Finance, and that the University's reports about the students receiving these funds would be accurate.

24. The University breached the Agreements by awarding Scholarship funds to students without a specialization in Entrepreneurship and Innovation or a concentration in Finance even though, on information and belief, there were other aid-eligible students that were specializing Entrepreneurship and Innovation or pursuing a concentration in Finance.

25. The University further breached the Agreements by reporting false information to Mr. Rosenthal about the students awarded Scholarship funds, effectively concealing its breaches of the Agreements

26. The value of Mr. Rosenthal's contractual expectations under the Scholarship Agreements is most readily measured and quantified by the amounts he donated in consideration for the University's promises, and Mr. Rosenthal is therefore entitled to recover these amounts as expectation damages. To the extent that Mr. Rosenthal's contractual expectations cannot be readily measured or quantified, he is entitled to recover the amounts he paid in reliance on the University's honoring the Agreements.

27.     Alternatively, the University's material breaches of the Agreements require rescission of the Agreements and restitution of the amounts Mr. Rosenthal donated to the University.

28.     To the extent that the donated funds cannot be returned to Mr. Rosenthal, these funds should be transferred to an educational institution or charity that will use them for their intended purpose: education of students interested in entrepreneurship, innovation, and finance.

29.     Under the Scholarship Agreements, the University's attribution of the Scholarship to Mr. Rosenthal and use of his name is conditioned on Mr. Rosenthal's donations. Because the donations must be returned to Mr. Rosenthal, the University should not be permitted to attribute any scholarship to Mr. Rosenthal or otherwise use his name.

30.     Additionally, continued association with the University's scholarship program will cause Mr. Rosenthal embarrassment and harm his reputation, resulting in irreparable harm to him. Regardless of whether the University retains the Scholarship funds, it should cease associating itself and its scholarships with Mr. Rosenthal.

## JURY DEMAND

31.     Mr. Rosenthal hereby demands a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Rosenthal prays that the Court:

a. adjudge and decree that the University has breached the Scholarship Agreements and the covenant of good faith and fair dealing contained therein and award him as damages the amount of his donations to the University or such other amounts according to proof; or

b. alternatively, adjudge and decree that the University has materially breached the Scholarship Agreements, rescind the Scholarship Agreements, and order the University

to make restitution to him of the amounts he donated under the Scholarship Agreements; and

c. order the University not to attribute to Mr. Rosenthal any Scholarship funds it may retain or any other scholarship it may award in the future, or otherwise use Mr. Rosenthal's name in promoting its scholarships; and

d. award Mr. Rosenthal his reasonable expenses and costs, including his reasonable attorneys' fees; and

e. award such other relief as the Court deems just and proper.

December 18, 2023

/s/ Elizabeth Sher
Elizabeth Sher
Day Pitney LLP
One Jefferson Road
Parsippany, NJ 07054-2891
(973) 966-6300
(973) 966-1015
esher@daypitney.com

Jeffrey P. Mueller (*pro hac vice* forthcoming)
Christopher A. Klimmek (*pro hac vice* forthcoming)
Day Pitney LLP
Goodwin Square
225 Asylum Street
Hartford, CT 06103-1212
(860) 275-0100
(860) 275-0343
jmueller@daypitney.com
cklimmek@daypitney.com

*Attorneys for Plaintiff Saul B. Rosenthal*