IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAUL B. ROSENTHAL,<br><br>   *Plaintiff,*<br><br> v.<br><br>THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA,<br><br>   *Defendant.* | CIVIL ACTION<br>NO. 23-5003 |

**Pappert, J.**                             **June 13, 2024**

## MEMORANDUM

  Saul Rosenthal donated over $168,000 to his alma mater, the University of Pennsylvania, to establish a scholarship fund in his name. The parties entered into two separate agreements pursuant to which Penn was allegedly required to award scholarship monies to students studying business. Rosenthal claims Penn has given the funds to student athletes instead.

  He now seeks rescission of the scholarship agreements and his money back or, alternatively, damages for breach of contract. He wants nothing to do with Penn going forward and doesn't want the school using his name or associating him with the scholarships.

  Penn moves for a more definite statement pursuant to Rule 12(e), claiming Rosenthal's complaint provides insufficient detail about when the alleged breaches occurred. The Court denies the Motion because Penn has more than enough information from which it can prepare its response.

1

I

In January 2012, Rosenthal entered a written agreement with Penn in which he promised to donate $125,000 over a five-year period and Penn promised to use those funds to award scholarships to students in financial need, with first preference to students also specializing in entrepreneurship and innovation and second preference to students concentrating in finance. (Compl. ¶ 10, ECF No. 1). In June 2015, Rosenthal donated another $25,000 to Penn, and Penn again promised to direct the scholarship funds to students interested in entrepreneurship and innovation or finance. (*Id.* at ¶ 11). In total, Rosenthal donated about $168,000 to the scholarship fund. (*Id.* at ¶ 12).

Rosenthal claims that Penn awarded scholarships to student athletes who did not meet the criteria outlined in the agreements. (*Id.* at ¶ 19). Specifically, Penn awarded scholarships to both a track-and-field athlete and a soccer player—neither of whom studied entrepreneurship and innovation or finance. (*Id.* at ¶¶ 16, 17). Rosenthal states that the soccer player "candidly admitted that the scholarship she received functioned as a substitute for an athletic scholarship" and that Penn represented to Rosenthal that the soccer player was pursuing a minor in entrepreneurship and innovation despite such a minor not existing. (*Id.* at ¶ 17). When Rosenthal complained to Penn that it was not using the scholarship funds for the agreed upon purpose, Penn temporarily changed how it disbursed the monies, but then went back to funding student athletes. (*Id.* at ¶ 20).

II

Rule 12(e) provides that a "party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous

that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "The Rule 12(e) 'motion shall point out the defects complained of and the details desired.'" *Thomas v. Independence Twp.*, 463 F.3d 285, 301 (3d Cir. 2006) (quoting Fed. R. Civ. P. 12(e)).

"Because Federal Rule of Civil Procedure 8 requires only a short and plain statement of a claim, motions for a more definite statement are 'highly disfavored.'" *Country Classics at Morgan Hill Homeowners' Ass'n, Inc. v. Country Classics at Morgan Hill, LLC*, 780 F. Supp. 2d 367, 370–71 (E.D. Pa. 2011) (citation omitted). Thus, motions for a more definite statement will be granted only "if a pleading is so vague or ambiguous that the opposing party cannot reasonably be required to make a responsive pleading." *Id.* at 371 (citing *S.E.C. v. Saltzman*, 127 F. Supp. 2d 660, 667 (E.D. Pa. 2000)). "Typically, courts restrict the use of this motion to pleadings suffering from unintelligibility rather than the want of detail." *Konold v. Superior Int'l Indus. Inc.*, 911 F. Supp. 2d 303, 309 (W.D. Pa. 2012) (quotation omitted). Ultimately, however, "the decision to grant a motion for a more definite statement is committed to the discretion of the district court." *Woodard v. FedEx Freight East, Inc.*, 250 F.R.D. 178, 182 (M.D. Pa. 2008) (citing *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 232 (D.N.J. 2003)).

### III

### A

Penn argues that without Rosenthal alleging additional information about when Penn breached the scholarship agreements, it is unable to reasonably prepare a

response and may waive, *inter alia*, its statute of limitations defense. (Mem. in Supp. of Mot. for a More Definite Statement, p. 1, ECF No. 9–1).

While courts have granted motions for a more definite statement "in cases in which the timing of the alleged acts would help a defendant frame a defense and increase the efficiency with which the dispute between the parties could be resolved," they "have denied motions for a more definite statement in which the timing of alleged acts underlying a claim was the proper subject of discovery." *Kimberton Healthcare Consulting, Inc. v. Primary PhysicianCare, Inc.*, No. 2:11-CV-04568, 2011 U.S. Dist. LEXIS 139980, 2011 WL 6046923, at *9 (E.D. Pa. Dec. 6, 2011) (collecting cases); *Compare Evans v. Port Authority of N.Y. & N.J.*, 06-CV-3239, 2007 WL 3071808, at *14 (D.N.J. Oct. 18, 2007) (granting request to provide dates of alleged discriminatory acts in civil right action) *with Mutual Indust., Inc. v. Am. Int'l Indus.*, 11-CV-5007, 2011 WL 4836195 at *3 (E.D. Pa. Oct. 11, 2011) (denying request to provide dates of defendant's purchase of company and alleged contacts with third parties underlying claims for tortious interference with contractual relations).

B

Additional information about Rosenthal's breach-of-contract claim is an appropriate subject of discovery. Rosenthal may not know the exact dates of Penn's alleged breaches since they concern Penn providing scholarship funds to students—not transactions directly involving Rosenthal.

Furthermore, Rosenthal's allegations are not so vague or ambiguous that Penn cannot frame a response. Rosenthal details when and how much he donated to Penn and the terms of their agreements. *See* (Compl. ¶¶ 10–13). He also specifies which

sports two of the student athletes who purportedly received his scholarship funds played, how he complained to Penn about misuse of his scholarship funds, and some of the representations that Penn made to him about the soccer player's scholarship. (*Id.* at ¶¶ 16–17). Plus, the pool of possible scholarship recipients—and thus the alleged breaches—should be traceable since Rosenthal's scholarship fund has only existed for about a decade and he donated $168,000, which is a sizable contribution from an individual donor but only a fraction of what Penn receives from scholarship donors. *See, e.g.*, *Ways to Give*, University of Pennsylvania, https://unsp.upenn.edu/ways-to-give/ (last visited June 12, 2024) (detailing scholarship-funding opportunities at levels of $125,000, $300,000, $500,000, $1 million and $2 million).

      An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***

Gerald J. Pappert, J.

5